IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VANESSA VALEASE GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No.: 2:15-cv-758-MHT-SRW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a Federal Tort Claims Act case. On October 15, 2016, plaintiff Vanessa Valease Gordon ("Plaintiff") filed a five-count complaint against defendants United States of America ("United States") and Jim Tynan ("Tynan"). On March 4, 2016, plaintiff moved to dismiss all claims (Counts II-VII[1]) against Tynan. (Doc. 16). On March 31, 2016, the undersigned recommended that the motion to dismiss be granted. (Doc. 24). On May 3, 2016, United States District Judge Myron H. Thompson adopted the recommendation and dismissed the claims against Tynan without prejudice. (Doc. 26).

The only remaining defendant is the United States. The sole claim against this defendant, for malicious prosecution, is brought pursuant to the Federal Torts Claims Act ("FTCA").[2] (Doc. 1). This case is before the court on the United States' motion to dismiss

---

[1] There are only five counts in the original complaint; however, the fifth count is numbered "VII" rather than "V." (Doc. 1).

[2] 28 U.S.C. § 2671 *et seq.*

and/or for summary judgment. (Doc. 27). The motion has been briefed and taken under submission without oral argument.

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  See 28 U.S.C. § 1391.  On March 14, 2016, this matter was referred to the undersigned by U.S. District Judge Myron Thompson for disposition or recommendation on all pretrial matters.  (Doc. 21).  See also 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; United States v. Raddatz, 447 U.S. 667 (1980); Jeffrey S. v. State Board of Education of State of Georgia, 896 F.2d 507 (11th Cir. 1990).

For the reasons stated herein, the United States' motion for summary judgment is due to be granted.

## I.      Summary judgment and standard of review[3]

The United States filed a motion to dismiss and an alternative motion for summary judgment. (Doc. 27).  Because both parties have submitted materials outside the pleadings and the court has considered those materials, the court addresses only the United States' motion for summary judgment.[4]  See Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th

---

[3] In 2007, Rule 56 was amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be stylistic only." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

[4] Both parties provide the court with standard of review on summary judgment and appear to brief this matter as if it is before the court on the motion for summary judgment, rather than on the alternative motion to dismiss. (Doc. 27 at 4-5; 8-9).

Cir. 1982); <u>Kachler v. Taylor</u>, 849 F. Supp. 1503, 1507 n.3 (M.D. Ala. 1994); <u>Lee v. United States</u>, 2007 WL 2774342, n. 2 (M.D. Ala. 2007).

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. <u>Chapman</u>, 229 F.3d at 1023; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1023; <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>Chapman</u>, 229 F.3d at 1023.  If the evidence [presented by the nonmoving party to rebut the moving

party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact – *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to show affirmatively the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the

non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## II.      Background and statement of relevant facts[5]

This case stems from plaintiff's prosecution and indictment for conspiracy to commit bank and wire fraud and aggravated identity theft, and her eventual acquittal, in the criminal case styled United States v. McCall, et al., Case No. 2:12-cr-204 (M.D. Ala.) (Albritton, J.). At the time of her prosecution, plaintiff was a United States Postal Service employee working at the Shakespeare station in Montgomery, Alabama. (Doc. 17-1 at 4-5).

At some point prior to October 2012, United States Postal Inspector Jim Tynan ("Inspector Tynan") referred the criminal investigation of plaintiff and five other

---

[5] These are the facts for summary judgment purposes only. They may or may not be the actual facts.  See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). The facts set out in this section are based on disputed evidence and are construed in a light most favorable to plaintiff; all reasonable inferences have been drawn from the evidence in her favor.  That construction and deference ends where there is no evidence to support an allegation of fact.  No findings of fact or credibility determinations are made from the evidence.

individuals to the United States Attorney's Office for the Middle District of Alabama. (Doc. 12-1 at 2). Inspector Tynan provided the United States Attorney with a referral memorandum and several binders of evidence concerning what he reported to be a conspiracy, led by Edmund Lee McCall, to steal credit cards from the mail, activate the cards, and use the cards for cash advances and purchases. (Id.). Assistant United States Attorney Denise O. Simpson ("AUSA Simpson") was assigned to the case in 2012.  (Id.). According to AUSA Simpson, Inspector Tynan explained in his referral memorandum that the majority of the credit cards were stolen from the Shakespeare postal station in Montgomery, Alabama, where Gordon worked. (Id. at 3).[6] A cooperating witness informed Inspector Tynan and/or AUSA Simpson that an insider in the post office named "Vanessa" was responsible for identifying mail containing credit cards and diverting it into a "dummy" mailbox, at which point another co-conspirator would pick it up.  (Id.). Inspector Tynan informed AUSA Simpson that he was never able to observe plaintiff – through video surveillance or any other means – actually diverting customer mail into a dummy mailbox, or identify the dummy mailbox, but he had examined the physical layout of the Shakespeare station and determined that it was physically possible for plaintiff to divert mail to a dummy mailbox. (Id.). AUSA Simpson also reviewed employment records, which

---

[6] The court recognizes that the portions of AUSA Simpson's declaration, which describe statements made by Inspector Tynan to her, constitute hearsay. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012) (internal quotation marks omitted). "Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Id. at 1293-94 (internal quotation marks omitted). This notwithstanding, plaintiff does not dispute AUSA Simpson's declaration, and instead, refers to it as an "admission against interest" and adopts it as her own exhibit. (Doc. 17-4).

showed that only one employee named "Vanessa" worked at Shakespeare station – plaintiff Vanessa Valease Gordon. (Id.).

Based on the information provided to her by Inspector Tynan, AUSA Simpson determined that there was probable cause to charge plaintiff as part of the conspiracy. (Id.). She presented a prosecution memorandum to the United States Attorney's Office's Criminal Chief, Louis Franklin, for approval. (Id.). She attached to the memorandum a draft indictment. (Id.). Franklin approved prosecution and sent AUSA Simpson's draft indictment to United States Attorney for the Middle District of Alabama, George Beck, who gave it final approval. (Id.). On October 17, 2012, AUSA Simpson presented the case to a grand jury. She called only one witness – Inspector Tynan. (Id.). The grand jury returned an indictment against all six alleged co-conspirators, including plaintiff. (Doc. 12-2).

Four of the defendants indicted on conspiracy charges entered into plea agreements with the government. (Doc. 12-1 at 4). AUSA Simpson tried the case against plaintiff and the alleged ringleader, Edmund McCall, from January 14 through 21, 2014. (Id.). At the close of the case, plaintiff moved for a judgment of acquittal, which was denied. (Id.). The next day, plaintiff renewed her motion and it was, again, denied. (Id.). At the conclusion of trial, the jury returned a verdict finding Edmund McCall guilty on all counts and plaintiff not guilty on all counts. (Id.).

## II.   Discussion

### A. Plaintiff's claim

As noted above, the United States is the sole remaining defendant in this case, and the only pending claim is one for malicious prosecution brought pursuant to the FTCA. Plaintiff claims in her complaint that she was maliciously prosecuted "at the suggestion and instigation" of Inspector Tynan, an "investigative or law enforcement officer."[7] (Doc. 1 at 5). She alleges that "Jim Tynan induced an indictment from the [g]rand [j]ury by his fraud, subornation, suppression of testimony, and[/]or other like misconduct during his federal [g]rand [j]ury testimony" and "never possessed evidence before or after the federal [g]rand [j]ury upon which [plaintiff] could have been convicted." (Id. at 6-7). Plaintiff alleges that Inspector Tynan and the government never possessed video, audio, photographic, fingerprint, DNA, "physical," eyewitness, or "other tangible evidence" to support the charges against her or to support Inspector Tynan's grand jury testimony.  (Id. at 8).

Plaintiff concedes that the grand jury indictment constitutes *prima facie* evidence of probable cause, but contends that "the presumption of probable cause is overcome by [Inspector] Tynan's fraud, subornation, suppression of testimony, or other like similar [sic]

---

[7] Plaintiff named as parties "fictitious defendants A-Z" and refers in her complaint to "other unknown federal agents of the Office of Inspector General … or other federal agency" who, along with Inspector Tynan, she alleges maliciously instigated her prosecution. (Doc. 1 at 3-4). On March 31, 2016, the undersigned recommended that fictitious parties be dismissed, as fictitious party pleading is not allowed in federal court. The recommendation was adopted on May 3, 2016. Therefore, for the purposes of this motion for summary judgment, the court construes plaintiff's FTCA claim as based solely on the actions of Inspector Tynan. This is consistent with plaintiff's briefs on summary judgment, which contain no mention of any other federal agents or investigators apart from Inspector Tynan.

or related misconduct presented to the [g]rand [j]ury." (Id.). She admits in her complaint that Inspector Tynan possessed statements that implicated her in the offense from at least two of her co-defendants, Rose Murphy, and Andrew Williams, each of whom pled guilty, but argues that those statements were "uncorroborated, unsubstantiated, and fabricated," and that this was or should have been evident to Inspector Tynan. (Id. at 9).

The United States contends that summary judgment is due to granted on two grounds. First, it argues that plaintiff's malicious prosecution claim is based entirely on Inspector Tynan's grand jury testimony and, because Inspector Tynan would be entitled to "absolute immunity" from a claim based on his grand jury testimony, the United States is likewise immune.  Second, it maintains that, to the extent plaintiff's malicious prosecution claim is based on something other than Inspector Tynan's grand jury testimony, summary judgment is still due to be granted because plaintiff has failed to overcome the indictment's preclusive effect.[8]

---

[8] The United States also argues – as a third ground – that Inspector Tynan did not, as a matter of law, instigate the malicious prosecution action because it was AUSA Simpson's decision to bring the indictment and present the case to a grand jury. (Doc. 23 at 4-6). The United States attaches AUSA Simpson's declaration – which states that she decided to bring charges against plaintiff and her co-defendants – to its initial motion for summary judgment, but it raises this argument for the first time in its reply brief. Plaintiff has not been afforded an opportunity to respond; therefore, this argument is not considered for purposes of the motion for summary judgment.  See Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005)("[A]s [the Eleventh Circuit] repeatedly ha[s] admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'")(quoting United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994)); see also Wetherbee v. S. Co., 423 F. App'x 933, 934 (11th Cir. 2011)("[A]lthough Wetherbee briefed these issues in detail in his reply brief, we do not consider arguments raised for the first time raised in a reply brief."); Butler v. Cleburne County Comm'n, 2012 WL 2357740, at *6 (N.D. Ala. Jan. 17, 2012)("[T]he court generally does not consider issues or arguments raised for the first time in a reply, for to do so deprives the non-movant of a fair opportunity to respond.").

**B.  The FTCA**

The United States, as a sovereign, is immune from suit unless it chooses to waive

its immunity.  <u>See</u> 28 U.S.C. § 2679(b)(1); <u>United States v. Mitchell</u>, 445 U.S. 535, 538

(1980).  Under the FTCA, the government has waived its sovereign immunity.  28 U.S.C.

§ 1346(b)(1) provides that

> the district courts ... shall have exclusive jurisdiction of civil
> actions on claims against the United States, for money
> damages ... for injury or loss of property, or personal injury or
> death caused by the negligent or wrongful act or omission of
> any employee of the Government while acting within the scope
> of his office or employment, under circumstances where the
> United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act
> or omission occurred.

28 U.S.C. § 1346(b)(1).  Thus, "[t]he FTCA waives the United States' sovereign immunity

for the negligent or wrongful act or omission of an employee of the government under

circumstances where the United States, if a private person, would be liable to the claimant

in accordance with the law of the place where the act or omission occurred."  <u>Douglas v.</u>

<u>U.S</u>, 796 F.Supp.2d 1354, 1363 (M.D. Fla. 2011).

28 U.S.C. § 2680(h) sets out exceptions to the general waiver of sovereign immunity

contained in § 1346 and includes what is commonly referred to as the "law enforcement

proviso."  It states:

> The provisions of this chapter and section 1346(b) of
> this title shall not apply to—
>
> [. . .]
>
> **(h)**  [a]ny claim arising out of assault, battery, false
> imprisonment, false arrest, malicious prosecution, abuse of

> process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

The Eleventh Circuit has concluded "that, while the first part of § 2680(h) discusses specific exceptions to the waiver of immunity and 'reinforces what paragraph (a) provides' in the context of the listed claims, "[t]he proviso in § 2680(h) takes the claims it specifies out of the exception and makes the general waiver applicable to them. It is an exception to the exceptions to the waiver for sovereign immunity.'" Trupei v. U.S., 304 Fed. App'x. 776, 783 (11th Cir. 2008). Accordingly, the Court has explained, "[t]he United States has waived its sovereign immunity for the claims listed in the § 2680(h) proviso and … a lawsuit against the United States is permitted insofar as it asserts those claims." Id. (internal citations omitted). Malicious prosecution is expressly included in the list of claims that are permitted against the United States with respect to acts and omissions of federal investigative or law enforcement officers. See id.

## C. Malicious prosecution

"'[T]he law of the place' where the alleged tortious activity occurred provides the substantive law for evaluation of the cause of action. Courts interpret 'the law of the place'

to mean the law of the state where the alleged tort occurred." Douglas, 796 F.Supp.2d at 1363 (citing Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001)). All of the events underlying plaintiff's complaint occurred in Alabama; therefore, Alabama law governs.

Under Alabama law, plaintiff must show the following to establish a claim for malicious prosecution: (1) a judicial proceeding was initiated by the defendant against the plaintiff, (2) without probable cause, (3) and with malice, (4) which terminated in plaintiff's favor and (5) was a proximate cause of damage suffered by plaintiff. Lee v. U.S., 2007 WL 2774342, *2 (M.D. Ala. 2007) (citing Smith v. Wendy's of the South, 503 So.2d 843, 844 (Ala. 1978)). "A grand jury indictment is prima facie evidence of probable cause and serves as a defense to an action for malicious prosecution unless there is evidence that the indictment was induced by fraud, subornation, suppression of testimony, or other like misconduct on the part of the party seeking the indictment." Id. (citing Riley v. City of Montgomery, 104 F.3d 1247, 1254 (11th Cir. 1997); Lumpkin v. Cofield, 536 So.2d 62, 64 (Ala. 1988)).

### D.  Plaintiff's malicious prosecution claim is due to be dismissed as a matter of law.

#### i.  Immunity

As a threshold matter, the court agrees that plaintiff's malicious prosecution claim is based entirely on Inspector Tynan's grand jury testimony. In plaintiff's complaint, she specifically alleges that that "[Inspector] Tynan induced an indictment from the [g]rand [j]ury by his fraud, subornation, suppression of testimony, and or other like misconduct

*during his federal [g]rand [j]ury testimony*" and "never possessed evidence before or after the federal [g]rand [j]ury upon which [plaintiff] could have been convicted." (Doc. 1 at 6-7)(emphasis added). Thus, her claim is that Inspector Tynan, by and through his grand jury testimony, unlawfully induced an indictment against her.[9] In opposition to the instant motion for summary judgment, plaintiff points to documents – independent of the transcript of Inspector Tynan's testimony – which she contends demonstrate that her claim is based on something other than Inspector Tyan's testimony. However, all of these documents are offered to support plaintiff's argument that Inspector Tynan lacked sufficient evidence upon which to base the testimony he gave to the grand jury. Therefore, plaintiff's claim is still – at its core – an attack on Inspector Tynan's grand jury testimony. Having determined that plaintiff's malicious prosecution claim is based on Inspector Tynan's testimony (specifically, whether he had the requisite evidence to give such testimony), and on nothing else, the court proceeds to the United States' argument that it is entitled to immunity from the malicious prosecution claim.

In its initial brief on summary judgment, the United States avers that because Inspector Tynan would be entitled to absolute immunity from a malicious prosecution claim based on his grand jury testimony, the United States is likewise immune. (Doc. 12 at 9-15). In support of this argument, the United States cites Eleventh Circuit case law holding

---

[9] Plaintiff is bound by the allegations pled in the complaint. "New claims can[n]ot be raised in response to summary judgment." Temploy, Inc. v. National Council on Compensation Ins., 650 F.Supp.2d 1145, 1154 (S.D. Ala. 2009)(citing Al-Amin v. Donald, 165 Fed.Appx. 733, 740 (11th Cir. 2006)("concluding that a plaintiff may not amend the complaint through argument in a brief opposing summary judgment)(unpublished)). See also Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (providing that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment[]").

that grand jury witnesses are entitled to absolute immunity from civil suit based on their testimony. (Doc. 12 at 10-12). In its reply brief, the United States further argues that Alabama law similarly bars claims against grand jury witnesses. (Doc. 23 at 2).

The court must first address the question of whether the United States is entitled to assert the same defenses and immunities that would be available to a private citizen. Because the United States is only liable to the extent that a private citizen would be, it reasonably follows that to the extent a private citizen would be entitled to certain defenses or immunities, the United States is similarly entitled. While the Eleventh Circuit does not appear to have ruled to this effect, other circuits presented with this question have so decided. The Second Circuit explained its reasoning as follows: "As immunities and defenses are defined by the same body of law that creates the cause of action, the defenses available to the United States in FTCA suits are those that would be available to a private person under the relevant state law." Vidro v. U.S., 720 F.3d 148, 151 (2d Cir. 2013). See also Napolitano v. Flynn, 949 F.2d 617, 621 (2d Cir. 1991) (recognizing that state law defining a cause of action must also be the law defining the corresponding immunities and defenses); In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 668 F.3d 281, 288 (5th Cir. 2012) ("[T]he government is entitled to raise any and all defenses that would potentially be available to private citizen or entity under state law."). This court agrees and adopts the reasoning of the Second and Fifth Circuits in this regard.

The law of the place – i.e., Alabama – governs the immunities and defenses available to the United States in this case. Therefore, the court next must determine whether, under Alabama law, a witness testifying before a federal grand jury is entitled to

immunity from civil claims based on his or her testimony. No Alabama case appears to have addressed this specific question. However, Alabama law is clear that "pertinent statements made in the course of judicial proceedings are absolutely privileged." Drees v. Turner, 45 So.3d 350, 358 (Ala. Civ. App. 2010)(citing O'Barr v. Feist, 292 Ala. 440, 445-446 (Ala. 1974)). Moreover, "absolutely privileged statements, no matter how false or malicious, cannot be made the basis of civil liability." Id. Although this question arises most often in defamation cases, the "rule applies equally to claims other than those based on defamation." Id.

While it is well settled that statements made during judicial proceedings may not form the basis of a civil claim, the court has not located, and defendant has not cited, any Alabama decision addressing whether a grand jury proceeding is a "judicial proceeding," so as to render grand jury testimony absolutely privileged. However, applying Alabama precedent to the present context, the court concludes that Alabama's doctrine of absolute privilege logically extends to statements made during grand jury proceedings, including federal grand jury proceedings.

Although neither the Alabama legislature nor the Alabama courts appears to have defined "judicial proceeding" – either in general or for the purpose of determining whether absolute privilege is warranted – the Alabama Supreme Court has provided guidance regarding what constitutes "judicial power," a "judicial act," and a "judicial function" in the context of absolute privilege. In O'Barr v. Feist, 292 Ala. 440, 444-45 (Ala. 1974), the court was presented with the question of whether a doctor who wrote a letter to a state probate judge recommending that the plaintiff be committed was entitled to immunity from

suit based on what the plaintiff contended were libelous statements contained in the letter. The court explained that "judicial power is authority, vested in some court, officer, or person, to hear and determine, when the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication.  Official action, the result of judgment or discretion, is a judicial act." Id. at 444-45 (citing Perkins v. United States Fidelity and Guaranty Co., 433 F.2d 1303 (5th Cir. 1970) (citing, in turn, Rainey v. Ridgeway, 151 Ala. 532, 43 So. 843 (1907)). Based on this precedent, the Alabama Supreme Court determined that the probate court's action in the commitment proceeding constituted a "judicial function," and that communications contained in a letter were, therefore, "written with reference to a judicial proceeding" and absolutely privileged.

In Alabama, there is no question that "judicial power" is exercised at state grand jury proceedings, that the court's presiding over grand jury proceedings is a "judicial function," and that the proceedings result in a "judicial act." See Fields v. State, 121 Ala. 16, 17, 25 So. 726, 727 (1899) (The grand jury "is that branch of the court, when organized under the statute, in which all criminal prosecutions by indictment must originate. It puts in motion the organized machinery for the trial of persons charged with crime, by presenting in open court, in the name of the state, a complaint, which must be indorsed, 'A true bill.' By this means the court acquires jurisdiction of the particular case. The functions and powers of the grand jury as to the indictment so returned are ended when the presentment is made, and the indictment or true bill is received by the court."); see also Petty v. State, 224 Ala. 451, 452, 140 So. 585, 586 (1932); Ala. R. Crim. P. 12.2, 12.3; and Ala. Code §§ 12-16-74, 12-16-190, 12-16-202 (Alabama courts decide whether state grand

juries are empaneled, recessed, adjourned, or recalled; they also qualify and excuse members of the venire and charge and instruct the grand jury concerning its powers and duties). Therefore, applying Alabama precedent, Alabama's own grand jury proceedings are "judicial proceedings," and testimony at those proceedings would be absolutely privileged.

As to testimony before a federal grand jury, a determination that a such a proceeding is a "judicial proceeding" for privilege purposes under Alabama law is consistent with Alabama's stated purpose for recognizing such testimonial privileges. The Alabama Supreme Court has explained as follows:

> [T]he privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and the enactment and administration of law, as for the promotion of public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.

O'Barr, 292 Ala. at 445, 296 So.2d at 156 (quoting Am.Jur.2d Libel and Slander § 193 at 696). Grand jury witnesses similarly have a need to testify freely without fear of prosecution or a suit against them for damages.

Federal courts which share Alabama's objectives in prohibiting suit based on absolutely privileged testimony have determined that grand jury witnesses are entitled to absolute immunity from suit based on their testimony. For example, the Supreme Court addressed this very issue in the §1983 context in Rehberg v. Paulk, __ U.S. __, 132 S.Ct. 1497 (2012). The court considered the historical common law justification for trial witness

immunity – *i.e.*, the need to reduce witnesses' fear of retaliatory litigation after trial and the interest of not depriving the tribunal of critical evidence – and found that those factors apply with equal force to grand jury witnesses. See also Garrett v. Stanton, 2009 WL 4258135, at *8 (S.D. Ala. 2009) (citations omitted) (Police officers enjoy the same absolute immunity as lay witnesses for their testimony in front of the grand jury because protecting witnesses from liability encourages witnesses to testify and furthers the fact-finding and truth-seeking process of the courts.). A number of state courts have reached the same conclusion for similar policy reasons. See, e.g., Toker v. Pollak, 376 N.E.2d 163, 167 (NY. Ct. App. 1978) (holding that "there is little doubt that a grand jury investigation constitutes a judicial proceeding" and that testifying witnesses are entitled to absolute immunity); Wagner v. Hilkey, 914 P.2d 460 (Colo. App. 1995) (a witness before a grand jury has absolute immunity from civil suit); Molaison v. Lukinovich, 142 So.3d 342 (La. Ct. App. 2014)(same); Egan v. Holmes, 2008 WL 238947, *4-5 (N.J. Super. Ct. App. Div. Jan. 30, 2008) (law enforcement witness before grand jury is entitled to absolute immunity from suit).

Additional federal court cases within this circuit that hold that grand jury witnesses are entitled to absolute immunity from suit based on their testimony before federal or state grand juries include the following: Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (state grand jury) (witnesses in criminal trials and grand jury proceedings are afforded absolute immunity); Scarbrough v. Myles, 245 F.3d 1299, 1305 (11th Cir. 2001) (state grand jury) (in §1983 cases, absolute immunity is accorded to functions intimately associated with the judicial phase of the criminal process; police officers have the same absolute

immunity as lay witnesses in testifying at trial or before a grand jury); Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (state grand jury) (witnesses are granted absolute immunity for their testimony during grand jury proceedings); Mastroianni v. Bowers, 173 F.3d 1363, 1367 (11th Cir. 1999) (state grand jury) (a witness has absolute immunity from civil liability based on his grand jury testimony); Kelly v. Curtis, 21 F.3d 1544, 1553 (11th Cir. 1994) (state grand jury) (testimony before a grand jury is protected by absolute immunity); Strength v. Hubert, 854 F.2d 421, 424-425 (11th Cir. 1988)(overruled on other grounds) (the grand jury is part of the judicial phase of a criminal proceeding, and grand jury testimony becomes a "judicial proceeding," such that grand jury witnesses are entitled to absolute immunity from suit based on their testimony); Robert v. Abbett, 2009 WL 902488, at *9 (M.D. Ala. 2009) (state grand jury) (police officer is entitled to the same absolute immunity as are lay witnesses in testifying at trial or before a grand jury); Pace v. Platt, 2002 WL 32098709, at *5 (N.D. Fla. 2002), aff'd, 67 F. App'x 584 (11th Cir. 2003) (federal grand jury)(it is well-settled that a law-enforcement officer witness is entitled to absolute immunity from civil liability for grand jury testimony, even if false); Datts v. McCormick, 2011 WL 1326818, at *1 n. 2 (S.D. Ga. 2011), report and recommendation adopted, 2011 WL 1279175 (S.D. Ga. 2011) (federal grand jury) (witnesses who testify before a federal grand jury enjoy absolute immunity from damages for their testimony).

Thus, for the reasons set out above, the court concludes that the public policy justifications underlying absolute immunity for statements made before an Alabama grand jury would also apply to testimony before a federal grand jury, and that Alabama law would prohibit suit against a federal grand jury witness on the ground that such testimony

constitutes a statement made in the course of judicial proceedings. Cf. Vidro, 720 F.3d at 151 (deciding that public policy justifications compel the conclusion that federal grand jury witnesses enjoy absolute immunity under Connecticut law).

The court next must decide whether the United States is entitled to assert immunity from suit in this FTCA case. At least one federal court has addressed this very issue in the FTCA context. In Kennedy v. Finley, 2013 WL 1137117 (D. Co. 2013), plaintiff brought an FTCA claim for malicious prosecution against the government and based the claim on a federal agent's testimony in pretrial proceedings and at trial. The government argued that the agent and, therefore, the United States, was shielded from liability by the absolute immunity which protects testifying witnesses. The court agreed and dismissed the malicious prosecution claim, to the extent it was based on the agent's testimony. Id. at *1-2. Likewise, in this case, because plaintiff's malicious prosecution claim is based on Inspector Tynan's grand jury testimony, the United States is immune from suit as a matter of law, and summary judgment is due to be granted.

### ii.   Preclusive effect of grand jury indictment

Even if the United States were not entitled to absolute immunity from plaintiff's malicious prosecution claim, summary judgment is still due to be granted.  To succeed on a claim for malicious prosecution, Alabama law requires plaintiff to demonstrate that (1) a judicial proceeding was initiated by the defendant against the plaintiff, (2) *without probable cause*, (3) and with malice, (4) which terminated in plaintiff's favor and (5) was a proximate cause of damage suffered by plaintiff. Lee, 2007 WL 2774342 at 2 (emphasis added).  Assuming, for summary judgment purposes, that the subject judicial proceeding

was initiated by Inspector Tynan,[10] which would satisfy the first element, plaintiff's claim nevertheless fails if she does not offer evidence showing that the proceeding was initiated without probable cause.  Plaintiff does not dispute the United States' evidence that she was indicted, or that an indictment constitutes *prima facie* evidence of the existence of probable cause.  Thus, the question is whether plaintiff has offered evidence "overthrowing, or tending to overthrow, the legal effect of the finding by the grand jury."  Smith v. Wendy's of the South, Inc., 503 So.2d 843 (Ala. 1987). To do so, plaintiff must come forward with evidence from which a jury could infer that Inspector Tynan induced the indictment by fraud, subornation, suppression of testimony, or other like misconduct." See National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d at 140.

In her opposition brief, Plaintiff argues that a "litany" of documents that she offers as evidence "strongly suggest an inducement from the [g]rand jury by postal inspector Tynan's fraud, subornation, suppression of testimony, and or other like misconduct during his federal [g]rand [j]ury testimony." (Doc. 17 at 11-12). Plaintiff contends the following documents evidence that Inspector Tynan "perpetrated a fraud  against the court" (Doc. 17 at 12): (1) AUSA Simpson's declaration, which plaintiff alleges refers to "'a referral memo and several binders of evidence' that may or may not have been provided to [p]laintiff Gordon previously in discovery"; (2) AUSA Simpson's declaration, which states that Inspector Tynan informed her that he had never been able to observe plaintiff actually diverting the mail into a dummy box; (3) AUSA Simpson's declaration, which states that

---

[10] See footnote 8, *infra*.

the only witness she called at the grand jury proceeding was Inspector Tynan; (4) AUSA Simpson's declaration, which plaintiff contends demonstrates that Inspector Tynan never possessed video, audio, photographic, fingerprint, DNA, "physical," eyewitness, or "other tangible evidence" to support the charges against her or to support Inspector Tynan's grand jury testimony; (5) Plaintiff's exhibits 7-12, which plaintiff represents to be the United States Attorney's  memoranda of interviews of co-defendants who pled guilty (namely, Andrew Williams, Antonio Harris, Broderick Brown, Corey Harris, Nakeisha Moore, and Rosie Murphy), and which plaintiff contends are "unreasonable, unreliable, [and] untrustworthy"; (6) Plaintiff's exhibits 1-5, which which plaintiff represents to constitute transcripts of testimony from her criminal trial; and (7) Plaintiff's Exhibit 13, which which plaintiff represents to be an affidavit offered in support of an application for a warrant to search Edmund McCall's residence, and which plaintiff appears to offer as evidence that Inspector Tynan did not seek or obtain a warrant to search plaintiff's home. The court addresses each in turn.

### a.  AUSA Simpson's declaration

Plaintiff adopts as her own exhibit AUSA Simpson's declaration, which contains the following statement: "Inspector Tynan's referral included a referral memo and several binders of evidence." (Doc. 12-1 at 2). Plaintiff contends that the binders referenced above "may or may not have been provided to [p]laintiff Gordon previously in discovery." (Doc. 17 at 3). However, even assuming that plaintiff did not receive these "binders" of unidentified evidence, plaintiff does not explain how defendant's failure to provide her with this evidence supports her malicious prosecution claim. Moreover, plaintiff does not

argue how this failure evidences Inspector Tynan's "fraud, subornation, suppression of testimony, and or other like misconduct" for the purpose of rebutting the presumption of probable cause created by her indictment.

The burden is not on the court to connect the links in the logical chain of a would-be argument where no actual argument is made. "A brief must make all arguments accessible to the judges, rather than ask them to play archeologist with the record." Marable v. Marion Military Institute, 906 F. Supp. 2d 1237 (S.D. Ala. 2012) (internal citations omitted). See also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); Williams v. Aircraft Workers Worldwide, Inc., 832 F. Supp. 2d 1347, 1352 (S.D. Ala. 2011) ("[A] court is not obligated to read minds or to construct arguments or theories that a party has failed to raise."); Higgins v. Moreno, 2011 WL 2456655 n. 7 (C.D. Ill. Jun. 15, 2011) ("If an argument is not made in a brief, the court will not reach into the brief's attachments, etc. to make a case for the party on summary judgment.").

Plaintiff also refers the court to the section in AUSA Simpson's declaration in which she states that Inspector Tynan "informed [her] that he was never able to observe [plaintiff], through video surveillance or any other means, actually diverting customer mail into a dummy box or to identify the dummy box." (Doc. 12-1 at 3). Again, plaintiff does not describe how this statement fortifies her malicious prosecution claim or, crucially, why it constitutes evidence that Inspector Tynan engaged in "fraud, subornation, suppression of

testimony, and or other like misconduct" for the purpose of rebutting the presumption of probable cause created by her indictment.

Plaintiff offers as additional evidence the portion of AUSA Simpson's declaration which states that the only witness AUSA Simpson called at the grand jury proceeding was Inspector Tynan. Again, plaintiff fails to clarify how this provides a foundation for her claim or constitutes evidence that Inspector Tynan engaged in prohibited conduct, such that the presumption of probable cause created by her indictment is rebutted.

Finally, plaintiff argues that AUSA Simpson's declaration demonstrates that Inspector Tynan and the government never possessed video, audio, photographic, fingerprint, DNA, "physical," eyewitness, or "other tangible evidence" to support the charges against her or to support Inspector Tynan's grand jury testimony. (Doc. 12-1 at 8). However, AUSA Simpson's declaration does not state that Inspector Tynan lacked evidence of the kinds enumerated by plaintiff, and the court declines to infer from the absence of an affirmative statement to that effect that Inspector Tynan did not possess such evidence. Even if the absence of such evidence constituted proof, the fact remains that plaintiff was indicted. Plaintiff again fails to tell the court how this purported evidence proves or even suggests that Inspector Tynan committed "fraud, subornation, suppression of testimony, and or other like misconduct," such that the presumption is rebutted.

### b. Memoranda of co-defendant interviews

Plaintiff also offers as evidence the United States Attorney's memoranda from interviews of her co-defendants. (Docs. 17-7 through 17-12). Plaintiff argues that the witnesses' described statements in the interviews are "unreasonable, unreliable, [and]

24

untrustworthy," and that they demonstrate "the lack of reasonable foundation for probable cause." (Doc. 17 at 5). Plaintiff does not, however, explain how any of the interviewees' statements is unreliable. Plaintiff also does not demonstrate how Inspector Tynan's alleged reliance on the statements supports her claim or why it is evidence that Tynan committed "fraud, subornation, suppression of testimony, and or other like misconduct," such that the presumption is rebutted.

### c.   Excerpts from criminal trial transcript

Plaintiff offers as additional evidence six excerpts from the transcript of her criminal trial, totaling over 900 pages. (Docs. 17-1 through 17-6). Plaintiff argues that "the trial transcript refer[s] to a possible alternative suspect that was never investigated," which the plaintiff argues "suggest[s] malice." (Doc. 17 at 16-17). However, plaintiff never cites to a single page or line of any of these excerpts. Rule 56(c)(1)(B)(3) instructs, "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(1)(B)(3). However, the court is not "required to ferret out delectable facts buried in a massive record." Chavez v. Sec'y Fla. Dept. of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) (internal citations omitted). See also Jones v. Sheehan, Young, & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 . . . saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (judges "are not like pigs, hunting for truffles."). Plaintiff is represented by counsel and is capable of providing relevant page citations. The

court declines to comb through the 900+ pages of trial transcript excerpts to locate the page or pages upon which plaintiff relies for this argument.

However, even if plaintiff met her burden on summary judgment and cited evidence suggesting there was an alternative suspect who was not investigated, plaintiff still fails to describe how the existence of an alternative suspect reinforces her claim or suggests that Inspector Tynan committed fraud, subornation, suppression of testimony, and or other like misconduct – much less, malice.  Accordingly, plaintiff has not met her burden to overcome the presumption created by her indictment.

### d. Affidavit in support of application for warrant to search Edmund McCall's residence.

Finally, plaintiff offers as evidence an affidavit in support of the government's application for a warrant to search co-defendant and alleged ringleader Edmund McCall's residence. (Doc. 13). Plaintiff states in her opposition brief: "[I]nspector Tynan sought and received a search warrant for the home of Edmund McCall and at the same time did not seek [o]r receive a search warrant for the home of [plaintiff]."  (Doc. 17 at  6)(emphasis in original). Plaintiff appears to offer this affidavit not as evidence that Inspector Tynan searched McCall's house, but as proof that Inspector Tynan did not search her house. However, she fails to make plain how this evidence supports her malicious prosecution claim or leads to a conclusion that Inspector Tynan committed fraud, subornation, suppression of testimony, and or other like misconduct and, therefore, fails to meet her burden in light of the presumption of probable cause created by her indictment.

The question before the court is not merely whether or not there existed probable cause to bring charges against plaintiff or whether Inspector Tynan had enough evidence – or the right evidence – before he testified to the grand jury. Plaintiff was indicted, and her indictment is *prima facie* evidence of probable cause.  Plaintiff's burden at this point is to overcome the presumption of probable cause by coming forward with facts, based in evidence, which show that the indictment was induced by fraud, subornation, suppression of testimony, or other misconduct of the party seeking the indictment. This she has failed to do.

Because plaintiff fails to present evidence sufficient to create a triable issue of fact on the question of whether Inspector Tynan committed fraud, subornation, suppression of testimony, or engaged in other misconduct, summary judgment is also due to be granted on this basis.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that defendant United States of America's motion for summary judgment (Doc. 11) be **GRANTED**.

It is ORDERED that the parties shall file any objections to the said Recommendation on or before September 7, 2016.  Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the magistrate judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).

DONE, on this the 31st day of August, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge